UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| J. RICHARD MARINO, | : |
| | : |
| Plaintiff, | :      Dkt No. 24-cv-03041 |
| | : |
| -against- | :      **COMPLAINT** |
| | :      **AND DEMAND** |
| SIEGEL & REINER, LLP, GLENN A. REINER, | :      **FOR JURY TRIAL** |
| and RICHARD H. DEL VALLE, | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff J. Richard Marino alleges as follows for his Complaint against defendants Siegel & Reiner, LLP, Glenn A. Reiner, and Richard H. Del Valle:

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff is a citizen of Florida and defendants are citizens of New York State and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(1) because one or more of the defendants resides in this District and they all do business here.

3. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

**The Parties**

4. Plaintiff J. Richard Marino ("Marino") is citizen of the State of Florida.

5. Siegel & Reiner, LLP is a law firm formed under New York law as a limited liability partnership with a place of business in New York County.

6. Upon information and belief, defendant Glenn A. Reiner resides in New York.

7. Reiner is an attorney admitted to practice law in New York.

8. At all times relevant to this action, Reiner was a partner of, or attorney employed by, Siegel & Reiner.

9. Upon information and belief, defendant Richard H. Del Valle resides in New York.

10. Del Valle is an attorney admitted to practice law in New York.

11. At all times relevant to this action, Del Valle was a partner of, or attorney employed by, Siegel & Reiner.

## The Mortgage Loans to Oki-Do Ltd.

12. In 2007, Oki-Do, Ltd. ("Oki-Do") was the owner of real property located at 2835 Shipyard Lane, in the unincorporated village of East Marion, New York 11939 (Section 38, Block 7, Lot 7.001) (the "Premises").

13. In October 2007, Oki-Do borrowed a total of $1 million from Marino and several other parties, including Edward Sklavos, Prime Real Estate Ventures, LLC, J.H. Loewy, LLC, Lindsey Leigh LLC 401k Profit Sharing Plan, Dr. Charles Kandler, Dr. Stephen Frank, Joan Olden, Philip Shumer, and Christina Swirni a/k/a Christina Smirni (collectively, with plaintiff, the "lenders").

14. The loans were evidenced by three promissory notes, copies of which are annexed as Exhibits A, B, and C.

15. As evidenced by the notes annexed as B and C, Marino's participation in the loan was $50,000, or 5% of the total loan amount. As such, Marino was entitled to 5% of all interest, principal payments, or other financial recovery on the loan.

3

16. The loans were secured by two mortgages for $500,000.00 each. The mortgages were originally executed on October 8, 2007 and October 15, 2007, and were consolidated into a single note and mortgage on the latter date via a Consolidation, Extension and Modification Agreement ("CEMA"), a copy of which is annexed as Exhibit D.

17. Oki-Do's principal, Dr. Kazuki Hillyer, executed several powers of attorney to Mr. Edward Stein. Stein executed the loan documents on behalf of Oki-Do.

18. Oki-Do made no payments on the loan. Oki-Do claimed that the power of attorney was improper and that Stein had no authority to sign the loan documents.

19. Marino and the other lenders retained counsel and commenced a lawsuit in Supreme Court, Suffolk County under Index No. 20698/2009, to collect on the notes and foreclose on the mortgage (the "Foreclosure Action").

20. The lenders were initially represented in the Foreclosure Action by the Law Office of Alexander E. Sklavos, P.C.

**Retainer of Defendants**

21. In May, 2012, defendants appeared in the Foreclosure Action as attorneys for all the plaintiffs, including Marino.

22. On May 22, 2012, plaintiff signed a Consent to Change Attorneys to substitute defendants in place of the Sklavos firm as his attorneys in the Foreclosure Action. A copy of the Consent to Change Attorneys is annexed as Exhibit E.

23. Defendants agreed to represent and advise plaintiff in the Foreclosure Action.

24. Defendants Reiner and Del Valle were the attorneys at Siegel & Reiner principally responsible for handling the matter.

4

25. Defendants represented plaintiff jointly with the other lenders but never advised plaintiff of the potential conflicts of interest inherent in the simultaneous representation of multiple parties in the same matter.

## The Fraudulent Assignment

26. On or about June 28, 2012, the defendant attorneys filed an Amended Summons and Verified Amended Complaint in the Foreclosure Action alleging that plaintiff had assigned his interest in the Oki-Do loan and mortgage to Mark and Eve Styczen. Copies of the Amended Summons and Verified Complaint (without Exhibits) are annexed as Exhibit F.

27. As part of the Verified Amended Complaint, the defendant attorneys included a purported assignment allegedly signed by plaintiff on October 15, 2009. A copy of the assignment is annexed as Exhibit G. This assignment is fraudulent – plaintiff never assigned his rights to anyone. Plaintiff never received any consideration for his rights in the Oki-Do loan and mortgage.

28. The defendant attorneys knew that the purported 2009 assignment was fraudulent. On its face, the assignment contains the indicia of fraud given that it was allegedly executed nearly three years earlier in October 2009 and that all signatures on the assignment were notarized on the same day by Jonathan Steinberg who himself had a financial stake in the case through his ownership of an interest in Prime Real Estate Ventures.

29. The defendant attorneys were by then quite familiar with Steinberg. Defendant Reiner had long been Steinberg's friend and business partner in various ventures prior to the Foreclosure Action. Reiner also was aware of Steinberg's financial situation throughout the Foreclosure Action.

30. Reiner and his firm fraudulently filed the Verified Amended Complaint with the fraudulent assignment to deceive the court and the other parties as to plaintiff's ownership in the Oki-Do loan and mortgage.

### The Trial, Judgment and Appeal

31. The court conducted a non-jury trial in the Foreclosure Action in March 2017 to resolve issues of fact related to the powers of attorney and as to whether Stein had authority to execute the mortgage and loan documents on behalf of Oki-Do.

32. By Order dated June 18, 2018, the court ruled in favor of the lenders determined that Stein had actual authority to bind Oki-Do with the mortgage by the power of attorney dated July 3, 2007, and that the mortgage was valid. The court further directed the plaintiffs to proceed with the foreclosure and submit an order of reference and judgment of foreclosure.

33. Oki-Do thereafter moved, pursuant to CPLR 4404 (b) for judgment in its favor dismissing the foreclosure complaint.

34. By Order dated January 28, 2019, the court denied Oki-Do's motion.

35. On June 26, 2019, judgment was entered in favor of the plaintiffs in the Foreclosure Action in the amount of $2,909,166.67, plus $185,792.05 for attorneys' fees, plus interest from March 15, 2019, plus costs. A copy of the judgment is annexed as Exhibit H.

36. Oki-Do appealed from the judgment of foreclosure to the Appellate Division Second Department.

37. By Decision and Order dated May 18, 2022, the Appellate Division denied Oki-Do's appeal and affirmed the judgment of foreclosure. A copy of the appeal decision is annexed as Exhibit I.

**Payment of the Judgment**

38. Following the appeal decision, Oki-Do paid the judgment.

39. Upon information and belief, Oki-Do paid the Foreclosure Action judgment in full by paying over $4 million.

40. Before Oki-Do paid the judgment, at the request of defendants, plaintiff signed a satisfaction of the mortgage prepared by defendants.

41. Upon information and belief, Siegel & Reiner received a portion of the payment from Oki-Do in its attorney trust account and directed and authorized the distribution of the balance of the moneys recovered from Oki-Do.

42. Upon information and belief, Siegel & Reiner paid the other lenders and other parties with no interest in the recovery from the funds recovered from Oki-Do in the Foreclosure Action without paying plaintiff his share of the recovery.

43. Siegel & Reiner wrongfully paid a portion of plaintiff's rightful share of the recovery in the Foreclosure Action to other parties.

44. For example, Siegel & Reiner wrongfully paid $262,000 to Prime RE Holdings Inc., a company which was not party to the Foreclosure Action, held no rights to the Oki-Do loan or mortgage, and which was formed on June 3, 2022, the very day Seigal & Reiner received payments from Oki-Do.

45. Siegel & Reiner also paid wrongfully $50,000 each to Mark Bortnick and Gregg Szerlip, two individuals who were not party to the Foreclosure Action, and who did not own any interest in the Oki-Do loan or mortgage.

46. Siegel & Reiner wrongfully authorized over $1.8 million of the recovery to be paid to attorney Jay Yackow who, in turn, paid over $1.7 million to himself, Euro American Funding Group and Euro American's principles Craig Kirsch and Richard Yevoli. None of these parties had any interest in the Oki-Do loan or mortgage; nor were they party to the Foreclosure Action.

47. Marino should have received a 5% *pro rata* share of the Oki-Do judgment payment in proportion to the share he invested in the loan to Oki-Do.

48. After deducting his *pro rata* share of the attorneys' fee award, Marino should have received $191,948.69.

49. Siegel & Reiner, however, only paid plaintiff $48,000, far less than 5% of the recovery on the Foreclosure Action.

## First Cause of Action for Legal Malpractice

50. Plaintiff repeats and realleges every allegation of this Complaint.

51. Plaintiff retained defendants to represent and advise him in connection with the claims on the Oki-Do loan and the claims asserted in the Foreclosure Action, and related matters.

52. Defendants acted as plaintiff's attorneys beginning on or about May 2012 and on a continuous basis thereafter through at least June 2022.

53. Throughout this period, plaintiff believed that defendants were acting as his attorneys in the Foreclosure Action and continued to repose confidence in defendants and in their ability and good faith, and there was continuing trust and confidence in the relationship between plaintiff and defendants.

54. In accepting the retainer, defendants expressly or impliedly agreed to comply with his professional obligations under the New York Rules of Professional Conduct.

55. As attorneys for plaintiff, defendants owed a duty to render legal services in a competent and professional manner and to act with ordinary and reasonable skill, care, and diligence.

56. Defendants acted negligently under the circumstances, failed to provide adequate legal services in accordance with generally accepted standards of the legal profession, and failed to act with ordinary and reasonable skill, care, and diligence.

57. The defendant attorneys' negligence consisted of, among other things, failing to investigate and confirm plaintiff's claims; failing to ascertain plaintiff's share of the claims and recovery in the Foreclosure Action; failing to maintain contact with plaintiff; failing to investigate the fraudulent assignment; failing to contact plaintiff when they received the fraudulent assignment; fraudulently filing the fraudulent assignment with the court in the Foreclosure Action; failing to disclose conflicts of interest inherent in representing multiple parties in the same matter; favoring other clients of Siegel & Reiner over plaintiff; failing to safeguard funds entrusted to Siegel & Reiner in the payment of the judgment in the Foreclosure Action; failing to advise plaintiff with respect to the distribution of the funds recovered in the Foreclosure Action; failing to account to plaintiff with respect to the distribution of the funds recovered in the Foreclosure Action; failing to provide legal representation in accordance with the standards of professional services consistent among attorneys in this community; delaying investigation into the loss of plaintiff's funds; failing to represent plaintiff's interests properly; failing to adequately supervise the work of inexperienced attorneys; failing to adequately

supervise the work of non-attorney staff; failing to research and know the law as it related to plaintiff's matter; failing to represent plaintiff diligently; and failing to advise plaintiff properly.

58. As a result of the wrongdoing alleged in this Complaint, defendants also breached the duty of care they owed to plaintiff and violated the New York Rules of Professional Conduct, including, but not limited to, the following Rules:

(i) Rule 1.1(a) - by failing to provide competent representation to plaintiff;

(ii) Rule 1.1(c)(1) – by failing to seek plaintiff's objectives through reasonably available means permitted by law;

(iii) Rule 1.1(c)(1) – by prejudicing and damaging the plaintiff during the course of the representation;

(iv) Rule 1.3(a) – by failing to act with reasonable diligence and promptness in representing plaintiff;

(v) Rule 1.3(b) – by neglecting plaintiff's matter;

(vi) Rule 1.4(a)(1)(iii) – by failing to promptly inform plaintiff of material developments in the matter;

(vii) Rule 1.4(a)(3) – by failing to keep plaintiff reasonably informed about the status of the matter;

(viii) Rule 1.4(b) – by failing to explain the matter to plaintiff to the extent reasonably necessary to permit them to make informed decisions regarding the representation;

(ix) Rule 1.4(a)(4) – by failing to promptly comply with plaintiff's reasonable requests for information;

(x) Rule 1.7 – by failing to advise plaintiff of the conflict of interest inherent in representing multiple parties to the Foreclosure Action and with interests in the recovery from the case;

(xi) Rule 1.7 - by failing to obtain plaintiff's informed consent to defendants' representation of multiple parties with differing interests in the Foreclosure Action;

(xii) Rule 1.7 – by representing plaintiff in the Foreclosure Action when there as a significant risk that defendants' professional judgment on behalf of plaintiff would be adversely affected by their, and specifically Rener's business, property, and other personal interests arising from his longstanding business and personal relationship with Steinberg, all without any disclosure to or waiver by plaintiff;

(xiii) Rule 1.8(g) - by participating in making an aggregate settlement of the claims in the Foreclosure Action without plaintiff's informed consent in a writing signed by plaintiff and without making disclosure of the existence and nature of all the claims involved and of the participation of each party in the settlement;

(xiv) Rule 1.15(c) - by failing to notify plaintiff of the funds received in the Foreclosure Action;

(xv) Rule 1.15(c) - by failing to maintain full records and provide an account to plaintiff for the Foreclosure Action payment proceeds entrusted to defendants;

(xvi) Rule 1.15(c) - by failing to promptly pay plaintiff as requested the funds in defendants' possession hat plaintiff was entitled to receive;

(xvii) Rule 5.1 - by failing to adequately supervise the work of associate attorneys; and

(xviii) Rule 5.3 - by failing to adequately supervise the work of paralegals and other non-lawyers at the firm.

59. Defendants' negligence and breach of their ethical duties to plaintiff was a proximate cause of plaintiff's damages as described above.

60. Had defendants represented and advised plaintiff properly, he would not have sustained the damages alleged in this Complaint.

61. By reason of the foregoing negligence of defendants, plaintiff has been damaged in the amount of $143,948.69 and is also entitled to the disgorgement of legal fees paid to defendants and prejudgment interest at the legal rate from June 3, 2022, the date defendants

11

received payment on account of the claims in the Foreclosure Action, through the date of judgment herein.

## Second Cause of Action for Breach of Contract

62. Plaintiff repeats and realleges every allegation of this Complaint.

63. Defendant agreed to act as escrowee for certain proceeds received for the benefit of the lenders on account of the loan to Oki-Do.

64. Plaintiff has performed all its obligations under the agreement.

65. Defendants have breached the agreement by reason of their gross negligence described above in failing to safeguard and deliver plaintiff's rightful share of the proceeds to plaintiff.

66. Defendants acted in bad faith and in in willful disregard of their duties as escrowee.

67. Defendants' breach has caused plaintiff to be damaged in the amount of $143,948.69 and is also entitled to the disgorgement of legal fees paid to defendant and prejudgment interest at the legal rate from June 3, 2022, the date defendants received payment on account of the claims in the Foreclosure Action, through the date of judgment herein.

## Third Cause of Action for Conversion

68. Plaintiff repeats and realleges every allegation of this Complaint.

69. Plaintiff has a legal right to 5% of all funds recovered in the Foreclosure Action.

70. As set forth above, defendants were wrongfully in possession of plaintiff's funds and exercised dominion and control over the funds in a manner that exceeded their authority.

71. Defendants have refused to return plaintiff's funds.

72. Defendants have converted the funds to their own use and benefit.

73. Defendants have refused to remit plaintiff's rightful share of the moneys recovered in the Foreclosure Action.

74. Based on the foregoing, defendants have unlawfully converted plaintiff's property.

75. Defendants' conversion has caused plaintiff to be damaged in the amount of $143,948.69 and is also entitled to the disgorgement of legal fees paid to defendant and prejudgment interest at the legal rate from the date defendants received payment on account of the claims in the Foreclosure Action through the date of judgment herein.

### Fourth Cause of Action for Violation of Judiciary Law §487

76. Plaintiff repeats and re-alleges every allegation of this Amended Complaint.

77. Defendants acted as plaintiff's attorneys in these matters beginning on or about May 2012 and on a continuous basis thereafter through at least June 3, 2022.

78. Throughout this period, plaintiff believed that the defendant attorneys continued to represent him in the Foreclosure Action and he continued to repose confidence in defendants and in their ability and good faith, and there was continuing trust and confidence in the relationship between plaintiff and these defendants.

79. New York Judiciary Law § 487 provides in pertinent part:

> An attorney or counselor who: (1) **is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the Court, or any party…** is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

80. Defendants violated Judiciary Law § 487 by filing the fraudulent Verified Amended Complaint and assignment in the Foreclosure Action.

81. Plaintiff incurred damages as a direct and proximate cause of plaintiff's violation of Judiciary Law § 487.

82. Plaintiff suffered damages from these breaches in amounts to be proven at trial.

83. Defendants' violation of Judiciary Law § 487 has caused plaintiff to be damaged in the amount of $143,948.69 and is also entitled to treble damages, the disgorgement of legal fees paid to defendant and prejudgment interest at the legal rate from June 3, 2022, the date defendants received payment on account of the claims in the Foreclosure Action through the date of judgment herein.

WHEREFORE, plaintiff J. Richard Marino respectfully requests that judgment be entered against defendants Siegel & Reiner, LLP, Glenn A. Reiner, and Richard H. Del Valle, jointly and severally, as follows:

 i. On the First Cause of Action, awarding plaintiff compensatory damages in the amount of $143,948.69 together with prejudgment interest, at the legal rate, from the dates set forth above until the date of judgment herein; and

 ii. On the Second Cause of Action, awarding plaintiff compensatory damages in the amount of $143,948.69 together with prejudgment interest, at the legal rate, from the dates set forth above until the date of judgment herein; and

 iii. On the Third Cause of Action, awarding plaintiff compensatory damages in the amount of $143,948.69, together with prejudgment interest, at the legal rate, from the dates set forth above until the date of judgment herein; and

 iv. On the Fourth Cause of Action, awarding plaintiff compensatory damages in the amount of $143,948.69, plus treble damages, together with prejudgment interest, at the legal rate, from the dates set forth above until the date of judgment herein; and

 v. Granting such other and further relief as the Court deems just and proper, including attorneys' fees and the costs and disbursements of this action.

Dated: New York, New York
April 22, 2024

                      SCHWARTZ & PONTERIO, PLLC
                      *Attorneys for Plaintiff*

By: _____
       Matthew F. Schwartz
       134 West 29th Street – Suite 1001
       New York, New York 10001
       Telephone: (212) 714-1200

**JURY DEMAND**

Plaintiff J. Richard Marino demands a trial by jury on all issues so triable.

Dated: New York, New York
April 22, 2024

                                                  SCHWARTZ & PONTERIO, PLLC
                                                  *Attorneys for Plaintiff*

By: _____
            Matthew F. Schwartz
            134 West 29th Street – Suite 1001
            New York, New York 10001
            Telephone: (212) 714-1200